# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARC T. ERNST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17CV2514 HEA |
| ) | |
| WAL-MART STORES EAST, LP ) | |
| ) | |
| Defendant. ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 66]. The Motion is fully briefed and a hearing on the Motion was held March 4, 2020. For the reasons set forth below, the Motion for Summary Judgment will be granted in part and denied in part.

## Facts and Background

The following relevant facts are undisputed:

Defendant Wal-Mart Stores East, LP ("Defendant" or "Walmart") employed Plaintiff Marc T. Ernst ("Plaintiff" or "Ernst") from September 2009 through January 2017. In 2015, Ernst transferred to Walmart's Fenton location. At the time of his termination Ernst was a "zone supervisor" whose duties were to control daily operations and task assignments for customer service managers, cashiers and

maintenance workers.  In her deposition, Ernst's immediate supervisor, Denise Merta ("Merta"), described Ernst as a hard worker and a reliable worker.

During Ernst's employment with Walmart, Walmart had a "Coaching for Improvement Policy" (the "Coaching Policy").  The Coaching Policy included three levels of "written coaching."  An employee could receive only one "coaching" per level.  Each coaching remained active for a twelve-month period, and each new coaching restarted the twelve-month period.  The twelve-month period was suspended during any leaves of absence.  According to the undisputed Coaching Policy document, "If [an employee's] unacceptable job performance or conduct warrants a level of coaching and [the employee] ha[s] already received a Third Written level of coaching within the previous 12 months, [the employee] will be subject to termination."

Walmart also had an Attendance and Punctuality Policy (the "Attendance Policy") and a Rest Breaks, Meal Period, and Days of Rest Policy (the "Break Policy") during Ernst's employment there.  Under the Attendance Policy, Walmart associates were allowed to receive only three "occurrences" during a rolling 6-month period.  More than three occurrences in a 6-month period would result in disciplinary action against the employee.  Under the Break Policy, a Walmart associate who worked more than 6 consecutive hours was required to take a 30-minute uninterrupted meal break.  A request for an exception to the Break Policy

had to be discussed with and approved by the employee's supervisor or salaried member of management. The Break Policy states, in part:

> Your Responsibilities: Except as otherwise provided, you must take full interrupted rest breaks and meal periods in accordance with the policy. Associates who violate this policy may be subject to disciplinary action up to and including termination. If you're unable to take a rest break or meal period for any reason, or if it is interrupted by work, you must personally contact your immediate supervisor, manager, or HR representative as soon as possible.

As part of Ernst's job, he was required to be familiar with Walmart policies and procedures. Ernst received training on the Coaching Policy and Break Policy.

Ernst received a first written coaching for "unauthorized use of company time" on March 8, 2015 and received a second written coaching for an attendance violation on December 23, 2015. He received a third written coaching for "job performance" on November 22, 2016.[1]

On November 18, 2016, Ernst was scheduled to work six hours, but ended up working for six hours and six minutes that day. He did not take a 30-minute break. Ernst alleges that on his way to clock out, he stopped to help a customer who asked for assistance, which resulted in his clocking out six minutes late. Ernst testified that he knew he had clocked out over the six-hour time limit. At his

---

[1] For this statement of fact, Defendant cites an undisputed documentary exhibit which accurately reflects the fact asserted. Plaintiff denies this fact, but the testimony he cites in denial does not concern Plaintiff's receipt of a written coaching on Nov. 22. The fact is deemed admitted.

3

deposition, Ernst agreed with the statement that "it was [his] obligation under the policy to inform someone that [he] had gone over time that day."[2]

An undisputed document titled "National Rest Break/Meal Period Investigation Worksheet" dated November 22, 2016 concerns Ernst's meal exception on November 18.[3] Merta testified that the personnel department prepared and completed the Worksheet. The Worksheet contains a "Return Worksheet" date of November 24, 2016. Merta testified that she first saw the Worksheet sometime before Christmas 2016, and that the Worksheet was not returned on November 24, 2016.

Ernst was terminated from employment at Walmart on January 6, 2017. Ernst's exit interview document dated January 6 indicates "Misconduct with Coachings" as the reason for termination, mentions the November 18 "meal exception," and notes that Ernst "already has three coachings making this a termination." Ernst alleges, however, that his termination was based on discrimination for requesting leave under the Family and Medical Leave Act, 29

---

[2] Plaintiff denies Defendant's fact assertion that "It was Plaintiff's obligation under [the Break Policy] to notify a member of management." In his denial, Plaintiff asserts that supervisor Denise Merta testified that no single policy stated this obligation. The denial is directly refuted by Plaintiff's own testimony, the plain language of the policy, and Merta's testimony that this rule is something employees learn in training. The fact is deemed admitted.

[3] In his statement of material facts, Plaintiff calls the Worksheet a "Termination Notice." (It should be noted that Plaintiff did not attach exhibits to his statement of material facts, though the Court identified the document in question here by cross-referencing Defendant's exhibits.) In any case, the words "Termination Notice" do not appear on the document.

U.S.C. § 2601 et seq. ("FMLA") and retaliation for requesting a reasonable accommodation for his disability under the American with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). In the Complaint, Ernst alleged that on or about December 28, 2016, he "informed Walmart of his serious health condition that was related to his disability, and his need for an upcoming surgical procedure to take place in February 2017 and requested FMLA leave for the medical procedure and accommodation for his disability." Ernst did not clock in or out on December 28, 2016. In his deposition, Ernst testified that he did not actually request FMLA leave, but that he told Merta and store manager Dan Gaddy ("Gaddy") about his future surgery and need for leave during an informal conversation in late December. Merta, on the other hand, testified at her deposition that she "did not recall" any such discussion.

Ernst was on intermittent FMLA leave at the time of his termination. Walmart granted Ernst's requests for leave from March 25 to April 25, 2015, from May 25 to June 25, 2016, and from July 11 to 26, 2016. Ernst does not allege that any other Walmart employee was treated more favorably than he.

## Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of

law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Id.*  "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law."  *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted).  Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'"  *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).  The

nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

## Discussion

"To establish a *prima facie* case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Hudson v. Tyson Fresh Meats, Inc.*, 787 F.3d 861, 866 (8th Cir. 2015) (quoting *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1007 (8th Cir.2012)). If the employee establishes a *prima facie* case, the Court then applies the familiar *McDonnell Douglas* burden-shifting framework: the burden shifts first to the employer to articulate a legitimate, nondiscriminatory reason for its challenged

actions, and if the employer articulates such a reason, the employee may then demonstrate that the proffered reason is pretextual, showing that "the employer's proffered explanation is unworthy of credence" or "persuading the court that a prohibited reason more likely motivated the employer." *Id.* (quoting *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir.2006)).

Similarly, establishing a *prima facie* case of ADA retaliation requires an employee to show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the two. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016). A retaliation claim "requires a but-for causal connection between the employee's assertion of her ADA rights and an adverse action by the employer." *Id.* (citation omitted). If a *prima facie* ADA retaliation claim is established, the Court applies the *McDonnell Douglas* burden shifting analysis. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 740 (8th Cir. 2017). If the employer articulates a legitimate reason for the adverse employment action, the plaintiff may create a triable question as to retaliation by showing the employer's articulated reason was not the true reason for the adverse action. *Id.*

Protected conduct

Walmart asserts that Ernst has failed to show he engaged in protected activity under the FMLA and ADA, respectively. Specifically, Walmart argues

8

that Ernst failed to present sufficient evidence to support his assertion that he told his supervisors in December 2016 that he would be taking FMLA leave related to his disabling condition in February 2017.

Walmart argues that the only evidence supporting Ernst's allegation that he told his supervisors Merta and Gaddy about his future FMLA leave in late December 2016 is his own "self-serving" deposition testimony, and therefore Ernst's contention that he engaged in protected activity is not supported by sufficient probative evidence under the summary judgment standard. Walmart states that at the summary judgment stage, it is not required to disprove Ernst's self-serving statements, rather "Plaintiff must come forward with evidence to support those allegations." Walmart goes on to suggest that Ernst could have submitted medical records recommending the surgical procedure, and notes that its records show that Ernst did not clock in or out on December 28, 29, or 30, even though the Complaint alleged that Ernst's notification about FMLA leave and accommodation occurred "on or around" December 28. Walmart also points to Ernst's testimony that he did not request FMLA leave in late 2016.

Walmart's arguments are unavailing. Whether Ernst engaged in protected activity by notifying his supervisors that he would be taking leave for surgery in the near future is a material fact that is in dispute. As to whether Ernst has provided sufficient probative evidence that the conversation actually happened, the

Court finds that he has. Direct evidence of what was said in a private, unrecorded conversation is generally limited to the recollections and testimony of the parties to the conversation; it is not readily supported by documentary evidence. Ernst testified that he told Merta and Gaddy about his need for leave during an informal conversation. While it is true that Ernst admitted at his deposition that he never actually requested FMLA leave, Ernst's testimony that he told Merta and Gaddy about his upcoming leave is consistent with the allegations in the Complaint. Walmart does not dispute that if such a conversation occurred, even if it was informal, that it would qualify as protected activity under the relevant statutes.

Merta testified that she did not recall Ernst telling her about future FMLA leave during late December 2016. (Gaddy was not deposed.) This "he-said, she-said-she-didn't-remember" clearly creates a question of fact as to whether the notification happened. Credibility issues relating to Ernst and any other witnesses to the conversation are properly reserved for the fact finder. A genuine dispute as to whether Ernst engaged in protected activity therefore exists, precluding summary judgment on that issue.

FMLA Claim - Causal connection and burden shifting

Walmart argues that Ernst has failed to establish a causal connection between his assertion of FMLA rights and his termination. Walmart cites Eighth Circuit precedent for its contention that generally, more than a temporal connection

between protected conduct and an adverse employment action is required to establish the causal connection element of FMLA and ADA claims. In one such case, *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827 (8th Cir. 2002), 13 days passed between an employee taking FMLA leave and her discharge. In that case, the Eighth Circuit held:

> Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, it appears that the length of time between protected activity and adverse action is important. The Supreme Court has said: "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (internal quotation marks omitted). . . . [W]e said in *Sprenger* [*v. Federal Home Loan Bank*], that proximity of a "matter of weeks" between disclosure of a potentially disabling condition and adverse employment action was sufficient to complete a prima facie case of discrimination. 253 F.3d at 1113–14. In this case, Smith's family leave began on January 1 and Allen discharged her on January 14. These two events are extremely close in time and we conclude that under our precedent this is sufficient, but barely so, to establish causation, completing Smith's prima facie case. This holding is consistent with the overarching philosophy of the *McDonnell Douglas* system of proof, which requires only a minimal showing before requiring the employer to explain its actions. *See generally Sprenger,* 253 F.3d at 1111.

*Id.* at 833. Here, less than two weeks elapsed between Ernst's protected activity (alleged to have happened "on or about" December 28, 2016) and his termination on January 6, 2017. As in *Smith*, this "extremely close" temporal proximity is

11

sufficient to establish the causal connection element of FMLA discrimination case. Because whether Ernst suffered an adverse employment action is not in dispute, Ernst has established each element of a *prima facie* FMLA discrimination claim.

The burden shifts to Walmart to articulate a legitimate, nondiscriminatory reason for terminating Ernst. Walmart offered a nonretaliatory reason for terminating Ernst, that is, that Ernst had too many written coachings under the Coaching Policy.

The burden shifts back to Ernst to argue that Walmart's proffered reason is pretextual. For his argument, Ernst notes the seven weeks that passed between his meal exception and his termination, as compared to the approximately two weeks between Ernst's alleged conversation with his supervisors about FMLA and his termination. Ernst also argues that a reasonable jury could disbelieve Walmart's explanations for its failure to promptly terminate Ernst (namely, misplacement of the HR paperwork and the busy Christmas season,) especially considering the relatively minor violation of working six minutes over the six-hour shift limit.

The Court finds that the evidence would allow a reasonable jury to find that Walmart's nondiscriminatory reason for firing Ernst was pretext. The timeline and nature of Ernst's termination create sufficient factual disputes to preclude summary judgment as to pretext. Summary judgment as to the FMLA discrimination claim will be denied.

ADA Claim – But-for causal connection

Walmart also argues that Ernst has failed to establish a but-for causal connection between his assertion of ADA rights and his termination. Unlike the FMLA discrimination claim, the ADA retaliation claim requires a heightened showing of "but for" causation. *Oehmke*, 844 F.3d at 758; *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 357-60. Of course, temporal proximity still weighs in favor of a finding of causation, but given the specific facts of this case, is not enough to make a showing of but-for causation. Rather, it is significant to the but-for causation consideration that Ernst had accumulated enough written coachings to warrant termination through Walmart's Coaching Policy. So too, is the fact that Ernst has not shown that Walmart employees have been spared termination based on the same employee violations. Under the heightened causation standard applied to retaliation claims, Ernst has failed to demonstrate that his termination would not have occurred but for his assertion of rights under the ADA. Summary judgment with respect to the ADA claim will be granted in Walmart's favor.

**Conclusion**

Viewing the record in the light most favorable to Plaintiff, genuine disputes of material fact remain for trial as to the FMLA discrimination claim, precluding summary judgment. As to Plaintiff's ADA retaliation claim, no genuine disputes

of material fact remain for trial, and judgment as a matter of law as to the ADA retaliation claim will be entered in favor of Defendant.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 66] is **GRANTED** as to Plaintiff's claim of ADA retaliation, and is **DENIED** as to Plaintiff's claim of FMLA discrimination.

Dated this 16th day of March, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE